Herman Semke, v. Commissioner.
Semke v. Commissioner
Docket No. 23544.
United States Tax Court
1951 Tax Ct. Memo LEXIS 332; 10 T.C.M. (CCH) 123; T.C.M. (RIA) 51035; January 31, 1951
*332 Lawrence Braunstein, Esq., for the petitioner. William F. Evans, Esq., for the respondent. OPPER
Memorandum Findings of Fact and Opinion OPPER, Judge: This proceeding arises from respondent's determination of deficiencies in income tax for the years 1942, 1943, 1945 and 1946 of $389.10, $2,098.63, $139 and $7,555.90, respectively, and 50 per cent fraud penalties for the same years of $194.55, $1,049.32, $69.50 and $3,777.95, respectively. By amended answer, respondent asserts an increased deficiency for 1946. Respondent has conceded that certain adjustments were erroneous and that no deficiency exists for 1945. The issues are whether respondent correctly determined petitioner's income by the "net worth" method and whether any part of any deficiency is due to fraud with intent to evade tax. Some of the facts have been stipulated. Findings of Fact The stipulated facts are found accordingly. Petitioner, a resident of Brooklyn, New York, filed his returns with the collector of internal revenue for the first district of New York. Petitioner was born in Germany in 1899. He had no education beyond elementary school. In the latter part of 1922 he came to this country *333 and subsequently he became a citizen. Petitioner was a butcher by trade. During his first six weeks in this country he was employed as a helper on a truck, and on January 2, 1922, he became employed as a butcher. In 1923 petitioner married in Germany while on a trip of two and one-half months duration. He returned alone, and his wife came to this country in the following year. Their only child, a daughter, was born in 1926, and she lived with them until her marriage in 1946. From January 2, 1923, to April 1, 1927, petitioner was employed as a butcher by H. C. Bohack Company, and when he left that company he was manager of the meat department. His salary rose from $35 per week to more than $60 per week. On April 1, 1927, petitioner purchased a butcher shop in Brooklyn, for which he paid $1,500. He took a lease on the building, which contained one store and two apartments, and he rented one apartment moving his family into the other apartment. Thereafter petitioner conducted a retail butcher business. In 1930 he purchased stocks for approximately $3,800. In April 1932 petitioner sold his business for $1,000 in cash and $2,000 in notes, and subsequently he took a trip to Germany *334 with his family. On April 25, 1932, petitioner rented a safety deposit box in a bank. He closed out his business checking account. At that time petitioner also had three savings bank accounts, whose balances on July 1, 1932, totaled $13,444.51. Petitioner returned in August 1932, and subsequently he repurchased his former business for the same amount which he had previously received. Thereafter petitioner operated the same business. Petitioner's wife acted as janitress of the building. On January 2, 1933, petitioner purchased a mortgage for $5,000. On January 5, 1933, petitioner withdrew the sum of $5,000 from his account at The Williamsburgh Savings Bank. In 1934 petitioner bought a building for $15,000, paying $6,500 in cash which he withdrew from his savings bank accounts, and giving a note, bearing 6 per cent interest, secured by a mortgage, for the balance. Thereafter petitioner moved his business to a store in that building and he has continued to conduct his business from that location. In his Federal income tax return for 1937, petitioner reported net profit of $3,400.05 from his business, total income of $3,895.97 and net income of $2,762.97. In his New York State *335 income of $2,762.97. In his New York State income tax returns for the years 1938 to 1941, inclusive, petitioner reported net income from his business in the amounts of $2,963.95, $2,514.64, $1,745.03 and $3,568.21, respectively, total income of $3,762.95, $3,614.91, $2,287.84, $3,380.64, respectively, and total net income of $2,328.82, $2,654.76, $1,298.09, and $3,315.64, respectively. In 1942 petitioner borrowed $2,690 from an insurance company which he repaid in the following year. In 1943 he received $3,500 in cash as payment on a mortgage which he held on property in Mount Vernon, New York. In that year his daughter entered college. In 1944 petitioner bought two fur coats for his wife and daughter, expending approximately $575. In 1946 he borrowed on an insurance policy the sum of $3,500 in cash from the New York Life Insurance Co. In the same year he took a three-month trip to Florida. Petitioner owned an automobile and paid life insurance premiums during the years in controversy. On December 6, 1943 petitioner purchased real property for $6,700, upon which he expended approximately $9,000 in improvements in 1946. On May 3, 1946 petitioner purchased real property for $6,750, *336 expending approximately $9,000 in that year for improvements. Petitioner's living expenses and other personal expenditures for the years 1942, 1943, and 1946 totaled $3,889.60, $3,396.73, and $2,915.38, respectively. Petitioner's Federal income tax return for 1942 reported net profit from his business of $414.05, rental income of $842.25, and net income after deductions of $576.70. Petitioner's 1943 return reported net profit from his business of $1,989.80, rental income of $733.55 and income tax net income of $2,087.05. Petitioner's 1946 return reported net profit from his business of $4,377.83, rental income of $1,639.12 and net income after deductions of $5,832.79. No part of the deficiency for any year was due to fraud with intent to evade tax. Opinion The inadequate, [1] inconsistent, [2] contradictory, [3] and inherently incredible nature of petitioner's explanation prevents us from accepting his account of his income and finances during the years in issue. Without this there is insufficient evidence to overcome the presumptive correctness of respondent's determination as far as the original deficiencies are concerned. *337 As to the fraud penalties, however, "The doubts in the record which operate against the petitioner as to the deficiency because the burden of proof is upon him are also effective to operate against the respondent upon the issue of fraud because the burden is upon him. L. Schepp Co., 25 B.T.A. 419, 436." Arthur M. Godwin, 34 B.T.A. 485, 494. We find no affirmative evidence to support a conclusion that any part of the deficiencies was due to fraud, particularly since no evidence as to the source of any additional income, legitimate or otherwise, appears. On this issue, petitioner must be sustained. For similar reasons the computation of deficiencies for 1942 and 1943 must be adjusted to take account of the provisions of the Current Tax Payment Act, and the claim for increased deficiency for 1946 must be denied. Decision will be entered under Rule 50. Footnotes
1. Petitioner's story is that for many years he saved cash in various secret hiding places. Petitioner never specified the amount of hidden cash at the beginning or during any of the years in controversy. Nor did he identify any specific assets claimed to have been acquired with hidden cash during those years. In his proposed findings petitioner claims that he had hidden cash of $15,650 on December 31, 1941, which is the figure originally given to revenue agents. But even accepting that claim, including petitioner's estimate of his living expenses, some $6,000 of increase in net worth remains unaccounted for during the years 1943 and 1946. ↩
2. Petitioner's testimony indicates relatively huge leaps in earnings and savings during certain periods, including the years 1929 to 1932, which his brief attempts to explain by requesting that we "take judicial notice that the depression did not make itself felt in this country until 1932. * * *." Petitioner's state tax returns reveal that in the year 1938 expenditures for interest and taxes, alone, reduced his income to $2,859.20, while in 1939 and 1940, after interest, taxes and contributions, petitioner had $2,654.76 and $1,298.09, respectively. Yet petitioner would have us believe that he saved at least $2,000 in cash in each of those years. ↩
3. Petitioner's explanation for secreting cash was that he distrusted banks, although he has had substantial amounts in several bank accounts; and that he was hiding it from his wife, yet even after his wife learned of the hidden money, petitioner borrowed a substantial sum on a life insurance policy and allegedly continued to maintain his hidden savings for some two years. Petitioner's purported ability to save an extraordinary portion of his earnings rests upon his extreme thrift, but he claims that while he kept these sums in cash, he paid relatively substantial amounts in interest on mortgages on his property.↩